IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| NORTH CAROLINA GROWERS' ASSOCIATION, INC., NATIONAL CHRISTMAS TREE ASSOCIATION, FLORIDA FRUIT AND VEGETABLE ASSOCIATION, INC., VIRGINIA AGRICULTURAL GROWERS ASSOCIATION, INC., SNAKE RIVER FARMERS ASSOCIATION, NATIONAL COUNCIL OF AGRICULTURAL EMPLOYERS, NORTH CAROLINA CHRISTMAS TREE ASSOCIATION, NORTH CAROLINA PICKLE PRODUCERS ASSOCIATION, FLORIDA CITRUS MUTUAL, NORTH CAROLINA AGRIBUSINESS COUNCIL, MAINE FOREST PRODUCTS COUNCIL, ALTA CITRUS, LLC, EVERGLADES HARVESTING AND HAULING, INC., DESOTO FRUIT AND HARVESTING, INC., FOREST RESOURCES ASSOCIATION, TITAN PEACH FARMS, INC., H-2A USA, INC., and OVERLOOK HARVESTING COMPANY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | 1:09CV411 |
| HILDA L. SOLIS, in her official capacity as United States Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR, JANET NAPOLITANO, in her official capacity as United States Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

<u>**MEMORANDUM OPINION AND ORDER**</u>

OSTEEN, JR., DISTRICT JUDGE.

Before the court is Plaintiffs' Motion for Preliminary Injunction. (Doc. 2.) Plaintiffs seek to preliminarily enjoin Defendants from temporarily substituting a regulation that governs the short-term employment of nonimmigrant agricultural workers. (<u>Id.</u>) Plaintiffs allege that the Department of Labor ("DOL") "suspended" a rule and (re)imposed a new rule without following the requisite procedures for "rule making" as set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 553 and 701. The court notes that it has not been required to, nor has it attempted to evaluate the substantive merits of any of administrative rules or regulations. The scope of review the court applies to administrative actions is narrow, and "a court is not to substitute its judgment for that of the agency." <u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983). In accordance with this standard, the court has evaluated Plaintiffs' motion and the process by which the DOL formulated the rule at issue in this case. For the reasons set forth herein, Plaintiffs' motion for a preliminary injunction (Doc. 2) will be granted.

**I.  Facts**

The DOL and the Department of Homeland Security's "H-2A" and "H-2B" visa programs provide methods for farmers and foresters to

2

temporarily employ foreign workers to perform labor that is in short supply in the United States.

In 1987, the DOL promulgated a series of regulations in furtherance of the H-2A program ("1987 Rule") that largely remained in effect until 2009. In 2008, the DOL promulgated new H-2A regulations ("2008 Rule"), eliminating the 1987 Rule and becoming effective on January 17, 2009. <u>See</u> Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77,110 (Dec. 18, 2008). The 2008 Rule was created to fix various perceived problems with the 1987 Rule. <u>See</u> <u>id.</u> For example, the 2008 Rule was designed to eliminate duplicative H-2A activities, more rigorously penalize noncompliant entities and protect workers. <u>Id.</u>

On March 17, 2009, the DOL issued a notice of proposed rule making ("2009 NPRM"), proposing to "suspend" the 2008 Rule for nine months and reinstate the 1987 Rule "[t]o avoid the regulatory vacuum that would result" from that suspension. Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 11,408, 11,408 (Mar. 17, 2009). The 2009 NPRM had a ten day comment period and advised interested parties that the DOL would not consider certain comments in promulgating any rule that might arise from the notice:

> Please provide written comments only on whether the
> Department should suspend the December 18, 2008 final

rule for further review and consideration of the issues that have arisen since the final rule's publication. <u>Comments concerning the substance or merits of the December 18, 2008 final rule or the prior rule will not be considered</u>.

<u>Id.</u> (emphasis added).

On May 29, 2009, consistent with the 2009 NPRM, the DOL issued a new H-2A rule ("Substitution Rule"), scheduled to take effect on June 29, 2009:

> The Department of Labor (DOL or Department) is suspending the H-2A Final Rule published on December 18, 2008 and in effect as of January 17, 2009. . . . To ensure continued functioning of the H-2A program, the Department is republishing and reinstating the regulations in place on January 16, 2009 for a period of 9 months, after which the Department will either have engaged in further rulemaking or lift the suspension.

Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,972 (May 29, 2009). With regard to the scope of comment restriction contained in the 2009 NPRM, the Substitution Rule states that "[t]hough all comments have been reviewed, only those comments responding to issues on which the [DOL] sought comment were considered in this Final Rule." <u>Id.</u> at 25,973. Additionally, the Substitution Rule contains a "grandfather" provision which provides that the 2008 Rule applies to all H-2A applications filed prior to the Substitution Rule's effective date. <u>Id.</u> at 25,979.

On June 9, 2009, North Carolina Growers' Association, Inc., National Christmas Tree Association, Florida Fruit and Vegetable Association, Inc., Virginia Agricultural Growers Association,

4

Inc., Snake River Farmers Association, National Council of
Agricultural Employers, North Carolina Christmas Tree
Association, North Carolina Pickle Producers Association, Florida
Citrus Mutual, North Carolina Agribusiness Council, Inc., Maine
Forest Products Council, Alta Citrus, LLC, Everglades Harvesting
and Hauling, Inc., Desoto Fruit and Harvesting, Inc., Forest
Resources Association, Titan Peach Farms, Inc., H-2A USA, Inc.
and Overlook Harvesting Company, LLC (collectively, "Plaintiffs")
filed a complaint naming as defendants the DOL, Hilda L. Solis,
in her official capacity as the Secretary of the DOL, the
Department Homeland Security ("DHS"), and Janet Napolitano, in
her official capacity as the Secretary of DHS (collectively,
"Defendants"). (Pls.' Compl. (Doc. 1).) Plaintiffs allege that
Defendants violated the APA, 5 U.S.C. §§ 553 and 701, in
formulating the Substitution Rule. (Id. at ¶¶ 54-86.) Also on
June 9, 2009, Plaintiffs filed a motion to preliminarily enjoin
Defendants from implementing the Substitution Rule. (Doc. 2.)

On June 18, 2009, United Farm Workers, James Cease, Mario
Centeno-Rodriguez, Juan Cisneros-Ibarra, Luis Enrique Cisneros-
Ibarra, Reymundo Gutierrez, Carlos Luis Guzman-Avila, Juan Luis
Guzman-Centeno, Jose Raul Guzman-Centeno, Abelardo Hernandez-
Aguas, Gregorio Huertas-Samano, Pedro Ibarra-Avila, Atanacio
Lugo-Rincon, Obdula Maldonado-Abellaneda, Miguel Angel Olguin-
Hernandez, Arturo Olguin-Monroy, Omera Rodriguez-Guzman,

Desiderio Tovar-Zapata and Alejandro Trejo-Leon (collectively, "Applicant Defendants") filed a Motion to Intervene as Parties Defendant. (Doc. 37.)  The court has taken Applicant Defendants' Motion to Intervene under advisement and permitted Applicant Defendants to intervene for the limited purpose of Plaintiffs' motion for preliminary injunctive relief.  The court likewise allowed Applicant Defendants to participate in an oral argument hearing on Plaintiffs' motion that was held on June 22, 2009.

## II.  Legal Standards

### A.  Preliminary Injunctive Relief

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)).  In the Fourth Circuit, courts employ the "balance-of-hardships test" in determining whether to issue preliminary injunctive relief.  Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 193, 196 (4th Cir. 1977).  Under the balance-of-hardships test, courts generally consider the following factors: (1) the likelihood of irreparable harm to the plaintiffs if injunctive relief is denied; (2) the likelihood of harm to the defendants if the order is granted; (3) the likelihood that the plaintiffs will prevail on the merits; and

6

(4) the degree to which the public interest is served by issuance of injunctive relief.  Id. at 197.  "[T]he plaintiff bears the burden of establishing that each of these factors supports granting the injunction."  Direx Isreal, 952 F.2d at 812 (quoting Technical Publ'g Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984) (internal brackets omitted)).

Pursuant to the balance-of-hardships test, the plaintiff must first make a clear showing of actual and immediate irreparable harm.  Direx Isreal, 952 F.2d at 812.  "If the plaintiff has made a 'clear showing' of irreparable injury absent injunctive relief, the court must next balance the likelihood of irreparable harm to the plaintiff if an injunction is not issued against the likelihood of irreparable harm to the defendant if an injunction is issued." Northgate Assocs. LLLP v. NY Credit Funding I, LLC, No. 1:08-cv-420, 2008 U.S. Dist. LEXIS 59065, at *18 (M.D.N.C. Aug. 8, 2008).  "[I]f a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success [factor] is displaced . . . ." Blackwelder, 550 F.2d at 195.  Preliminary injunctive relief then will be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus more deliberate investigation."  Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).  "But if the plight of

7

the defendant [is] not substantially different from that of the plaintiffs,' that is, if there is no imbalance of hardship in favor of the plaintiff, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of likelihood of success." MicroStrategy, 245 F.3d at 339 (quoting Direx Israel, 952 F.2d at 808 (quotation marks omitted)). "The importance of probability of success increases as the probability of irreparable injury diminishes." Blackwelder, 550 F.2d at 195.[1]

### B. Review of Agency Action

Judicial review of agency action is narrow. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. A reviewing court may not substitute its judgment for that of the agency. Id. However, an agency's action may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle

---

[1] The standard for the issuance of preliminary injunctive relief as discussed in this opinion appears to be consistent the standard outlined by the Supreme Court in Winter v. Nat'l Res. Def. Council, ___ U.S. ___, 129 S.Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

<u>Mfrs. Ass'n</u>, 463 U.S. at 43 (citation and internal quotation marks omitted).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies . . . .

<u>Id.</u>

## III. Discussion

### A.    Irreparable Harm to Plaintiffs

Plaintiffs allege that they will likely suffer irreparable harm as a result of the increase in wages they will be required to pay workers because of the substantive changes in the H-2A regulations made by the Substitution Rule. This court agrees.

Plaintiffs will likely suffer irreparable harm in the form of unrecoverable economic damages absent injunctive relief. By replacing the 2008 Rule with the 1987 Rule, albeit for a period of nine months, the Substitution Rule will increase Plaintiffs' business costs. For example, the Adverse Effective Wage Rate ("AEWR"), that is, the H-2A minimum wage, for North Carolina farmers under the 2008 Rule is between $7.25 and $8.51 per hour, whereas it is $9.34 per hour under the 1987 Rule. (Wicker Aff.

(Doc. 4-3) ¶ 5.)[2]

Plaintiffs' likely irreparable harm absent relief is both actual and immediate. Plaintiffs, in accordance with the business plans they created for the current year before the Substitution Rule was formulated, intend on submitting H-2A applications after the Substitution Rule's effective date, (see Maciborski Aff. (Doc. 4-5) ¶ 2 ("We apply for the second wave of H-2A workers [for the current fiscal year] in July.")), and thus those applications will be governed by the 1987 Rule and the higher AEWRs called for by that rule.[3]

---

[2] Farmers must be "certified" by the DOL to participate in the H-2A program. To obtain certification, the contracts the farmers enter into with their workers must comply with the H-2A rule and regulations in effect at that time. See 20 C.F.R. § 655.105(g).

At oral argument, all parties agreed that the AEWRs set by the DOL's H-2A rule affects the wage rates in the applicable labor markets. A rule raising the AEWR increases the market wage rate. Correspondingly, a rule lowering the AEWR decreases the market wage rate. See Indus. Holographics, Inc. v. Donovan, 722 F.2d 1362, 1367 (7th Cir. 1983) (stating that the assumption that employment of an alien at wages below the prevailing wage will tend to affect the wages of American workers is not arbitrary or capricious).

[3] For this same reason the Substitution Rule's grandfather provision does not eliminate Plaintiffs' likely irreparable harm.

The Substitution Rule takes effect on June 29, 2009. Plaintiffs can submit H-2A applications at any time. Plaintiffs have tendered unrefuted evidence that one of its members plans on submitting H-2A applications sometime in July, 2009, that is, no more than thirty-five days after the issuance of this memorandum opinion or twenty-seven days after the Substitution Rule's effective date. (See Maciborski Aff. (Doc. 4-5) ¶ 2 ("We apply for the second wave of H-2A workers [for the current fiscal year] in July.").) A plaintiff's irreparable harm need not be completely certain, it is only required to be "likely."

Plaintiffs' economic losses are unrecoverable in that suits for economic damages against the federal government and federal agencies are barred by the sovereign immunity doctrine. <u>See</u> <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475, 484-86 (1994) (stating that federal courts may not exercise jurisdiction against the United States or one if its agencies unless the federal defendant has clearly waived its sovereign immunity from suit). Likewise, Plaintiffs will not be able to recover their losses from H-2A workers. Under the Substitution Rule, Plaintiffs will be required by law to contractually agree to employment terms consistent with the requirements provided for by that rule. <u>See</u> 20 C.F.R. § 655.105(g). Further, H-2A workers are temporary employees from other countries, making it less likely that Plaintiffs could garnish any wages from H-2A workers that Plaintiffs will have overpaid if the Substitution Rule is later determined to be invalid.

The Fourth Circuit Court of Appeals has not directly addressed whether unrecoverable economic losses constitute irreparable harm.[4] However, in finding such losses constitute

<u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 193, 195 (4th Cir. 1977). Plaintiffs' have made the requisite showing that their prospective harm is both actual and immediate.

[4] This court disagrees with Applicant Defendants' contention that the Fourth Circuit specifically addressed this issue in <u>Feller v. Brock</u>, 802 F.2d 722, 727 (4th Cir. 1987). In that case, the Fourth Circuit never discussed the proposition that unrecoverable economic damages can constitute irreparable harm.

11

irreparable harm under the facts of this case, the court notes
that it is in agreement with those courts that have evaluated the
issue.  _See_ _Iowa Utils. Bd. v. F.C.C._, 109 F.3d 418, 426 (8th
Cir. 1996); _Foltz v. U.S. News & World Report, Inc._, 613 F. Supp.
634, 643 (D.D.C. 1985); _Ill. Bell Tel. Co. v. Hurley_, No. 05 C
1149, 2005 WL 735968, at *7 (N.D. Ill. Mar. 29, 2005); _Hollywood_
_Healthcare Corp. v. Deltec, Inc._, No. Civ. 04-1713, 2004 WL
1118610, at *11 (D. Minn. May 17, 2004).[5]  While it is beyond
dispute that economic losses generally do not constitute
irreparable harm, this general rule rests on the assumption that
economic losses are recoverable.  _See_ _Iowa Utils. Bd._, 109 F.3d
at 426 (stating that cases that declare that economic losses are
not irreparable harm rest on the assumption that those losses are

---

In fact, the _Feller_ court balanced the parties' hardships,
suggesting that the movant's unrecoverable economic losses
constituted irreparable harm.  _See_ _Direx Israel, Ltd. v._
_Breakthrough Med. Corp._, 952 F.2d 802, 812 (4th Cir. 1991)
(stating that under the balance-of-hardships test the plaintiff
must _first_ make a clear showing of actual and immediate
irreparable harm); _Rum Creek Coal Sales, Inc. v. Caperton_, 926
F.2d 353, 360 (4th Cir. 1991) ("The 'balance of the hardship'
test does not negate the requirement that the [movant] show some
irreparable harm.").

     [5] Defendants' assertion that this conclusion means that
"every motion for [sic] preliminary injunction within the Fourth
Circuit against government defendants [will] automatically be
granted in favor of plaintiffs where any economic loss is
alleged" is unfounded.  (_See_ Defs.' Supplemental Mem. (Doc. 53)
2.)  Where the movant has shown some quantum of irreparable
harm, the likelihood of irreparable harm to the movant is only
one of several balance-of-hardships factors that must be
considered in determining whether to grant preliminary injunctive
relief.

recoverable); <u>McGean v. Montgomery County</u>, Nos. 94-2067, 94-2194, 1996 WL 295315, at *1 (4th Cir. June 5, 1996) ("Harm is not considered irreparable <u>if</u> it can be compensated by money damages . . . ." (emphasis added)); <u>Dickson v. Morrison</u>, No. 98-2446, 1999 WL 543230, at *8 (4th Cir. July 27, 1999) ("[The plaintiff's] alleged harm was not irreparable <u>because</u> she could receive money damages . . . ." (emphasis added)).[6]  As previously stated, in this case, Plaintiffs' economic losses are not recoverable.  <u>See</u> <u>O'Brien v. Appomattox County</u>, No. 02-2019, 2009 WL 21711347, at *2 (4th Cir. July 24, 2003) (per curiam) (upholding district court's issuance of a preliminary injunction based on finding irreparable harm by virtue of the plaintiffs not being able to recover their economic losses during the pending litigation).  Since Plaintiffs have met their burden of proving that they are likely to suffer irreparable harm absent injunctive relief, the court now turns to assessing the harm Defendants will

---

[6] Defendants suggest that the loss of a business is the only irreparable economic harm that may be considered as a basis for granting preliminary injunctive relief.  Although Defendants correctly note that the D.C. Circuit has held that economic losses constitute irreparable harm when the potential harm threatens the existence of the movant's business, courts in that same circuit have likewise held that unrecoverable economic losses constitute irreparable harm.  <u>See</u> <u>Foltz v. U.S. News & World Report, Inc.</u>, 613 F. Supp. 634, 643 (D.D.C. 1985); <u>see also</u> <u>The Sunday Sch. Bd., Of the S. Baptist Convention v. U.S. Postal Serv.</u>, No. 99-5018, 1999 U.S. App. LEXIS 11061, at *1 (D.C. Cir. Apr. 30, 1999) (per curiam) ("Although economic loss may constitute irreparable harm, the [plaintiff] has not shown that the alleged potential liability is unrecoverable or that it will be forced to go out of business by the uncertainty.").

13

suffer if Plaintiffs' motion is granted.

**B.    Harm to Defendants**

Defendants have not directly stated the manner in which they are likely to suffer harm if a preliminary injunction is granted. Defendants did offer broad justifications in support of the DOL's suspension of the 2008 Rule.  (See Def.'s Mem. in Opp'n (Doc. 36) 13-15.)  Defendants suspect that the 2008 Rule has resulted in the depletion of agency resources, increased agency and public confusion, and increased H-2A application processing delays. (Id.)

The court finds that Defendants are unlikely to suffer significant harm if Plaintiffs' motion for a preliminary injunction is granted.  The government has administered the 2008 Rule since January 17, 2009.  A preliminary injunction will merely maintain the status quo as it has existed since that date.

At this point, any harm Defendants might suffer is speculative at best.  Under the Substitution Rule the 2008 Rule will go back into effect after nine months.  Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,973 (May 29, 2009).  This "sunset" provision was included in the Substitution Rule because Defendants themselves are uncertain over the amount of harm, if any, the 2008 Rule has caused or will cause.  See id. (stating that, absent additional rule making, the 2008 Rule will automatically go back into effect after nine

14

months and that the suspension of the [2008] Rule and temporary
reinstatement of the [1987 Rule] will allow the Department to
review the [2008] Rule . . . .").  This suggests that Defendants
are not likely to suffer significant harm if the 2008 Rule
remains in place while they decide whether or not to keep that
rule or formulate a new one.[7]

Similarly, Applicant Defendants are not likely to suffer
great harm upon issuance of a preliminary injunction.  Unlike
Plaintiffs, Applicant Defendants can recover economic damages
they are owed if Defendants ultimately prevail.  The court
recognizes that delayed receipt of funds for which Applicant
Defendants may be entitled might impose some hardship to
Applicant Defendants and their families.  However, in light of
Plaintiffs showing of <u>irreparable</u> harm, this hardship is not
enough to tip the balance in favor of not granting Plaintiffs'
motion.

## C.    Likelihood of Success

Based on a forecast of the evidence, Plaintiffs have shown
that they are likely to prevail on the merits.  Under the APA,

---

[7] The court notes that even if Plaintiffs' motion is
granted, nothing stops Defendants from implementing a new rule to
address any (real, perceived or fictitious) harm that arises from
the continued administration of the 2008 Rule, provided
Defendants comply with the requirements of the APA.  As evidenced
by the promulgation of the Substitution Rule, the rule
formulation process can be completed in as little as three
months.

15

"rule making" is defined as an agency's "process for formulating,
amending, or repealing a rule." 5 U.S.C. § 551(5). Further, §
553(c) of the APA requires that agencies "give interested persons
an opportunity to participate in the rule making through
submission of written data, views, or arguments." 5 U.S.C. §
553(c). Defendants concede that the DOL's suspension of the 2008
Rule and reinstatement of the 1987 Rule constituted "rule making"
under §§ 551 and 553.[8]

This court finds that, for purposes of the motion at hand,

_____

[8] The Substitution Rule is a "rule," as that term is defined
in the APA. Section 551(4) states that a "rule" is "the whole or
a part of an agency statement of general or particular
applicability . . . designed to implement, interpret, or
prescribe law or policy." 5 U.S.C. § 551(4). An act also
constitutes a "rule" if it "includes the approval or prescription
for the future" of rates or wages. Id. Here, the Substitution
Rule, specifically the component that reinstates the 1987 Rule,
constitutes a "rule" in that it implements the AEWRs with which
Plaintiffs must comply.
    Notwithstanding Defendants' concession and the fact that the
Supreme Court has suggested that rule suspensions are
permissible, see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v.
State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 n.15 (1983) ("We
think that it would have been permissible for the agency to
temporarily suspend the passive restraint requirement . . . ."),
it is not clear whether rule suspensions constitute "rule making"
under § 551(5) and thus must comply with § 553(c). Nevertheless,
it is not necessary to resolve this issue to determine whether
Plaintiffs' motion should be granted. Here, Defendants did more
than just suspend a set a regulations in promulgating the
Substitution Rule. In addition to withdrawing a rule, Defendants
effectively formulated a new rule by reinstating the 1987 Rule.
As stated, the APA's definition of "rule making" explicitly
covers rule formulation. See 5 U.S.C. § 551(5) (defining "rule
making" as an agency's "process for formulating, amending, or
repealing a rule." (emphasis added)). Accordingly, in order for
the Substitution Rule to be valid, the DOL must have complied
with § 553(c) of the APA in reinstating the 1987 Rule.

16

Plaintiffs have presented a substantial question as to the validity the 2009 NPRM's scope of comment restriction violated § 553(c) of the APA because the restriction prohibited Plaintiffs from participating in the making of the actual rule the DOL proposed to implement, that is, the 1987 Rule. See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 11,408, 11,408 (Mar. 17, 2009) ("Comments concerning the substance or merits of the December 18, 2008 final rule or the prior rule will not be considered."). Although the parties might be familiar with the 1987 Rule, the APA does not contain a "reinstatement of old rules" exception to the "opportunity to comment" right conferred to interested parties by § 553(c). Furthermore, there is no direct authority, nor have Defendants presented any authority, in support of the proposition that (temporary) rule reinstatements should be evaluated under a different legal standard than that which is used in assessing the promulgation of all other types of rules.[9]

_____

[9] Plaintiffs have offered evidence that they would have submitted additional comments absent the scope of comment restriction contained in the 2009 NPRM. (See Wicker Aff. (Doc. 4-3) Ex. A at 20) ("Again, as with the rest of the substance of the regulations governing the H-2A program, the NCGA would like an opportunity to comment on the specific provisions . . . of the Department's proposal . . . . But according to the terms set by the Department in the Notice, any comments on these subjects will not be considered . . . .") Accordingly, Plaintiffs are able to make the requisite showing that they were prejudiced by the comment restriction. See Columbia Venture LLC, v. S.C. Wildlife Fed'n, 562 F.3d 290, 294 ("[T]he party who claims deficient notice bears the burden of proving that any such deficiency was

17

Similarly, for purposes of their motion for a preliminary injunction, Plaintiffs have established that a court will likely find that Defendants' formulation of the Substitution Rule was arbitrary and capricious as that term is used in 5 U.S.C. § 706(2)(A), in that the DOL openly failed to consider comments concerning the merits and substance of the rule they reinstated. See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,973 (May 29, 2009) ("Though all comments have been reviewed, only those comments responding to issues on which the [DOL] sought comment were considered in this Final Rule."). Defendants have not presented any authority or argument to explain their refusal to consider the substance and merits of the 1987 Rule, nor have they explained why the evaluation of the substance and the merits of the 1987 Rule and the 2008 Rule were not relevant issues that the DOL was required to consider. See id.; Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (stating that a rule may be set aside if the agency entirely failed to consider important aspects of the problem and that "[t]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection

_____

prejudicial, and if that party fails to carry its burden, the agency's decision must be upheld." (citation and internal quotation marks omitted)).

18

between the facts found and the choice made.").[10]

Finally, the Substitution Rule's reinstatement of the 1987 Rule in its entirety makes it likely that Plaintiffs will ultimately prevail on the merits. See id. at 25,979. Total reinstatement of the 1987 Rule raises serious doubts as to the validity of the Substitution Rule because the Fourth Circuit has already held that a regulation contained within the 1987 Rule is invalid and harmed a party that is a plaintiff in the current action. See U.S. Dept. of Labor v. N.C. Growers' Assoc., Inc., 377 F.3d 345, 353 (4th Cir. 2004) ("[W]e hold that the cultivation, growing, and harvesting of Christmas trees is agriculture as defined in § 203(f), and that the employees of the Growers are thus exempt from the overtime provisions of the FLSA.").[11]

---

[10] This is particularly significant in light of the fact that the Substitution Rule states that a H-2A rule change was warranted because of "severe economic conditions [now] facing the country." See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,972 (May 29, 2009). Without the DOL reviewing and analyzing the substance and merits of the 1987 Rule, it is not clear that the DOL could have made a rational determination that reinstatement of that rule was an appropriate response to the country's change in economic circumstances.

[11] The Applicant Defendants have repeatedly stated that this court is considering the validity of the 2008 Rule and the policy decisions that underlie that rule in evaluating Plaintiffs' motion. Applicant Defendants are incorrect. The formulation process associated with the Substitution Rule is the matter at issue in this case.

19

### D.    Public Interest

The public interest is likely to be furthered to the same degree whether the court grants or denies Plaintiffs' motion for preliminary injunctive relief.  On the one hand, Plaintiffs assert that if their motion is not granted there will be labor shortages resulting in higher food and commodity prices.  (Pls.' Mem. in Supp. (Doc. 3) 19-20.)  On the other hand, Defendants suggest that if a preliminary injunction is issued non-H-2A worker wages might be depressed and the government may have to bear the cost of administering an H-2A rule that might be changed by the current Presidential Administration for policy reasons. See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,972 (May 29, 2009) ("[T]he development of [2008 Rule] was based in part on the policy positions of the prior Administration with which the current Administration may differ and wish to reconsider . . . .  In light of the potential for new rulemaking . . . it would not be an efficient use of limited agency resources, appropriated from taxpayer funds, to continue to attempt to operationalize the [2008 Rule] . . . .").  The court finds that neither of these interests significantly outweigh the other.  Accordingly, based on the facts of this case and a forecast of the evidence, the court concludes that its assessment of the other balance-of-hardships factors is controlling.

## IV. Conclusion

For the reasons set forth above, particularly, the relatively slight amount of harm Defendants will suffer if an injunction is issued and the substantial likelihood that Plaintiffs will ultimately succeed on the merits, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is GRANTED.

This the 29th day of June 2009.

_William L. Osteen, Jr._
United States District Judge

21