UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| NORTH CAROLINA GROWERS' ASSOCIATION, INC., *et al.* | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 09 cv 411 |
| HILDA L. SOLIS, *et al.*, | )<br>) |
| Defendants. | )<br>) |

## SECOND AFFIDAVIT OF LEE WICKER

The affiant, having been duly sworn, affirms and states as follows:

1. My name is Lee Wicker. I am Deputy Director for Plaintiff the North Carolina Growers' Association, Inc. ("NCGA"). I have personal knowledge of the facts stated herein.

2. On December 18, 2008, then-Secretary of Labor Elaine Chao issued a final rule for the H2A program to be effective January 17, 2009 ("the Chao Final Rule"). The preamble to the Chao Final Rule stated that the DOL did not consider it a violation of the Fair Labor Standards Act ("FLSA") minimum wage provisions for farmers to wait until the 50-percent point of the season (as required by the H-2A regulations) to reimburse certain inbound transportation and related expenses of H-2A workers. In other words, the Chao Final Rule said that farmers did not have to reimburse these expenses in the H-2A workers' first workweeks. Based on this section in the Preamble to the Chao Final Rule, when preparing contracts (technically, "Clearance Orders") for its grower-members, NCGA included language specifically stating that farmers would not reimburse these expenses in the first week of employment. The portion of our

1

2009 Clearance Order addressing transportation is attached as Exhibit A (Item 17). NCGA farmers filed approximately 14 Clearance Orders containing this language with the DOL between January 17 and March 26, 2009, all were approved by the DOL, and approximately 2,500 H-2A workers began employment under these terms.

3.   On March 26, 2009, current Secretary of Labor Hilda Solis withdrew the portion of the Chao Final Rule interpreting the transportation expense issue. If the Withdrawal is not enjoined, approximately 600 farmers will potentially be in violation of the FLSA minimum wage requirements for approximately 2,500 H-2A workers' first workweeks. Thus, they face potential back pay liability in the amount of approximately $995,625.00.

This the 1st day of September, 2009.

_____
Lee Wicker

SWORN TO AND SUBSCRIBED BY ME
This the 1st day of September, 2009

Barbara Coe
Notary Public
My Commission Expires: 8/5/2011

795621.1

avoid confusion and mistakes. Interstate SWA's are strongly encouraged to contact the North Carolina Employment Security Commission Job Service Central office in Raleigh N.C. at (919) 733-3215 prior to contacting the NCGA to confirm the terms, conditions and start date of the job. **Workers referred by SWA's should be fully apprised by the local employment office of the terms, conditions and nature of employment prior to referral. Only workers legally entitled to work in the United States and who possess original identity and employment eligibility documents sufficient to complete INS Form I-9, as required by the Immigration and Nationality Act, should report to work. Workers referred against this order should be informed that they must have these documents in their possession when they arrive at the place of employment to go to work.** Employees must present an original document or documents that establish identity and employment eligibility as required by the INA within three business days of the date employment begins. Please see the back of the form I-9 for a list of acceptable document(s). Employees who do not comply with this requirement by the end of the third work day will not be permitted to continue employment until this requirement has been satisfied.

Workers recruited against the Job Offer from within normal commuting distance will not be provided with housing, subsistence and transportation.

17. Transportation: In accordance with the regulations found at 20 CFR 655.104(h)(1),(2), and (3) the following paragraphs under section 17 are the terms and conditions, in their entirety, related to the transportation benefit and related subsistence benefit, when applicable, provided under this clearance order.

The Employer will offer transportation to and from the daily work site (from grower provided housing to field or other worksite and return) at no cost to the workers entitled to the housing benefit described in Section 4 of the ETA 790 and attachment, paragraph 14 above. For US workers who commute to work daily, the grower will offer free on farm transportation during the work day. Commuting workers understand that it is their responsibility to get to work on time each day work is available and that they soley assume all liability and costs for their personal transportation. The use of employer provided daily transportation by workers, as described in this paragraph, is voluntary; no worker is required as a condition of employment to utilize the daily transportation on the worksite offered by the employer. Employer will provide free transportation to eligible workers from the housing site to the worksite and return. Workers are always free to choose their own means of transportation at their own expense and liability.

The following paragraphs related to inbound and outbound transportation pertain only to workers who are not within commuting distance and cannot reasonably return to their place of residence the same day and are, therefore, eligible for the benefit.

The Employer will not advance transportation and subsistence costs to the place of employment for any worker.

For US workers eligible for the inbound transportation benefit, the Employer will reimburse US workers who complete 50 percent of the work contract period and who are beyond commuting distance the reasonable cost of transportation and subsistence from the place from which the worker has departed to the employer's place of employment. The amount of the reimbursement for transportation cost will be the worker's actual transportation cost from the place from which the worker has departed to the employer's

Page - 15

place of employment, and by regulation is not required to exceed the most economical and reasonable common carrier transportation cost for the distance involved. For eligible foreign (H-2A) workers coming from outside the United States, the basis for the reimbursement benefit is the place from which the worker departed (the place of recruitment), which DOL has interpreted in the regulations to mean the appropriate US consulate or port of entry (NCGA will pay to whichever point is greatest, as some workers are issued visas at interior consulate posts and some workers receive visas at border consulate posts), unless the H-2A worker is transferring to the NCGA job (with proper status) from another certified farm from within the United States (which will be the point of departure for calculating the reimbursement unless the previous employer has already paid). All other criteria for this benefit is identical, as described in this paragraph, for foreign and domestic workers. The employer reserves the right to arrange charter or other transportation to assure the lowest available inbound transportation cost. Such inbound transportation will be at the worker's expense. Workers who do not avail themselves of such transportation, when available, will be reimbursed only the per worker cost of the employer-arranged transportation or the most economical and reasonable common carrier transportation cost for the distance involved, whichever is cheapest. Workers are always free to choose their own means of inbound transportation at their own liability.

For US workers who complete the work contract and are eligible for the outbound transportation benefit, the Employer will provide or pay for the worker's reasonable cost of return transportation and subsistence from the place of employment to the place from which the worker departed to work for the employer, except when the worker will not be returning to the original place of departure to the employer's place of employment due to subsequent employment with another employer. If the subsequent employer has not agreed to provide or pay for the worker's transportation to the subsequent place of employment, the Employer will provide or pay for the transportation and subsistence to the subsequent place of employment in lieu of providing or paying for such expenses from the place of employment to the place from which the worker originally departed to work for the employer. If the subsequent employer has agreed to provide or pay for the worker's transportation and subsistence to the subsequent place of employment the Employer will not provide or pay for such expenses. For foreign (H-2A) workers who came to work from outside the United States, the basis for the outbound transportation benefit is the place from which the worker originally departed, which will be considered the appropriate US consulate or port of entry (NCGA will pay to whichever point is greatest, as some workers are issued visas at interior consulate posts and some workers receive visas at border consulate posts), as defined by DOL in the regulations. All other criteria for this benefit is identical, as described in this paragraph, for foreign and domestic workers. The Employer reserves the right to arrange charter or other return transportation. Workers eligible for this benefit who do not wish to avail themselves of Association arranged return transportation will be provided their outbound transportation and subsistence checks through the grower via US mail. In those circumstances, the grower will distribute the checks as soon as all work is completed, as determined by the Association/Employer, and the worker is ready to depart. Workers may select any means of transportation home they choose, however, the reimbursement is limited to the most economical and reasonable common carrier transportation cost for the distance involved. Workers who make a reservation on employer/Association arranged transportation (requests, orally or otherwise, that a seat be held for their passage either personally, or, through FLOC, another spokesperson authorized by the worker, their grower, or another worker) on the Employer/Association arranged transportation (charter, coach, or any other transportation) will forfeit $50.00 of their outbound transportation benefit as a penalty

Case 1:09-cv-00411-WO-LPA Document 80-2 Filed 09/10/09 Page 5 of 6

for the cancellation. Workers who arrange their own transportation understand they assume all liability and hold harmless the growers/association for any damages, injuries, personal or property losses.

The employer will not reimburse, pay for or provide transportation and subsistence to a worker who does not provide documentation of identity and employment eligibility required to complete INS Form I-9, or who has knowledge at the place of recruitment that he can not perform the duties of the job as described in this job order, or who abandons his employment, or who is discharged for lawful job related reasons. The Employer will provide or pay for transportation and subsistence under this agreement if the worker is terminated because of work related injury and is so certified by a doctor acceptable to the Employer before leaving the place of employment, or is terminated because of an Act of God which makes fulfillment of the work contract impossible, as provided in paragraph 9C, or if the worker is displaced by a U.S. worker under the 30 day rule in 20 CFR 655.102(f)(3)(i).

Daily subsistence reimbursement will be paid to workers who are eligible for reimbursement of transportation costs in accordance with the regulations at 20 CFR 655.104(h)(1), which refers to 20 CFR 655.104(g) and is governed by 20 CFR 655.114(a), which is capped at $9.90 per day for 3 meals under the regulation. NCGA and its members have agreed that Subsistence reimbursement shall be limited to $10.50 per day.

Other Conditions of Employment:

18. Discipline and/or Termination: Employer may discipline and/or terminate the worker for lawful job-related reasons and so notify the Job Service local office of the termination if the worker: a) refuses without justified cause to perform work for which the worker was recruited and hired, b) commit serious act(s) of misconduct or serious or repeated violation(s) of Work Rules attached hereto. c) fails after completing the training period to perform the work as specified in Item 11 and Attachment, d) malingers or otherwise refuses without justified cause to perform as directed the work for which the Worker was recruited and hired; e) provides other lawful job-related reason(s) for termination of employment, f) abandons his employment; g) fails to meet applicable production standards. h) falsifies identification, personnel, medical, production or other work related records, i) fails or refuses to take a drug test, or j) commits acts of insubordination.

19. Workers must notify the employer prior to voluntarily terminating their employment. All wages due will be forwarded to the last known address for Workers that leave without providing notice. It is imperative that workers provide a complete and accurate address to the employer no later than the first day of employment. These employers have a no complete, no rehire policy. Termination for lawful job related reasons before the specified ending date listed in this application will disqualify the employee from future employment opportunities with this employer. Workers who abandon their employment without notice during the period covered by this work agreement are terminated immediately and will be disqualified from future employment oppurtunities with this employer. Voluntary resignation before the specified ending date listed in this application may disqualify the employee from future employment opportunities with these employer. For workers who resign their employment voluntarily, the employer will consider and evaluate special circumstances and hardship cases on a case by case basis. Employees, without exception, are required to notify appropriate supervisory staff prior to voluntarily terminating their employment to be considered and eligible for exemption to the no complete - no rehire policy.

Page - 17