IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


NORTH CAROLINA GROWERS'            )
ASSOCIATION, INC., NATIONAL        )
CHRISTMAS TREE ASSOCIATION,        )
FLORIDA FRUIT &                    )
VEGETABLE ASSOCIATION, INC.,       )
VIRGINIA AGRICULTURAL GROWERS      )
ASSOCIATION, INC., SNAKE           )
RIVER FARMERS ASSOCIATION,         )
NATIONAL COUNCIL OF                )
AGRICULTURAL EMPLOYERS,            )
NORTH CAROLINA CHRISTMAS           )
TREE ASSOCIATION, NORTH            )
CAROLINA PICKLE PRODUCERS          )
ASSOCIATION, FLORIDA CITRUS        )
MUTUAL, NORTH CAROLINA             )
AGRIBUSINESS COUNCIL, INC.,        )
MAINE FOREST PRODUCTS COUNCIL,     )
ALTA CITRUS, LLC, EVERGLADES       )
HARVESTING & HAULING, INC.,        )
DESOTO FRUIT AND HARVESTING,       )
INC., FOREST RESOURCES             )
ASSOCIATION, TITAN PEACH           )
FARMS, INC., H-2A USA, INC.,       )
and OVERLOOK HARVESTING            )
COMPANY, LLC,                      )
                                   )
        Plaintiffs,                )
                                   )
             v.                    )            1:09CV411
                                   )
HILDA L. SOLIS, in her             )
official capacity as United        )
States Secretary of Labor,         )
UNITED STATES DEPARTMENT OF        )
LABOR, JANET NAPOLITANO, in        )
her official capacity as           )
United States Secretary of         )
Homeland Security, and             )
UNITED STATES DEPARTMENT OF        )
HOMELAND SECURITY,                 )
                                   )
        Defendants,                )
                                   )
        and                        )

```
UNITED FARM WORKERS,                 )
JAMES CEASE,                         )
MARIO CENTENO-RODRIGUEZ,             )
JUAN CISNEROS-IBARRA,                )
LUIS ENRIQUE CISNEROS-IBARRA,        )
REYMUNDO GUTIERREZ,                  )
CARLOS LUIS GUZMAN-AVILA,            )
JUAN LUIS GUZMAN-CENTENO,            )
JOSE RAUL GUZMAN-CENTENO,            )
ABELARDO HERNANDEZ-AGUAS,            )
GREGORIO HUERTAS-SAMANO,             )
PEDRO IBARRA-AVILA,                  )
ATANACIO LUGO-RINCON,                )
OBDULA MALDONADO-ABELLANEDA,         )
MIGUEL ANGEL OLGUIN-HERNANDEZ,       )
ARTURO OLGUIN-MONROY,                )
OMERA RODRIGUEZ-GUZMAN,              )
DESIDERIO TOVAR-ZAPATA, and          )
ALEJANDRO TREJO-LEON,                )
on behalf of themselves and          )
all others similarly situated,       )
                                     )
        Defendant-Intervenors.       )
```

## MEMORANDUM OPINION AND ORDER

OSTEEN, JR., DISTRICT JUDGE.

Before the court are Plaintiffs' Motion for Summary Judgment
(Doc. 124) and Defendant-Intervenors' Motions for Partial Summary
Judgment (Docs. 131, 132).  Plaintiffs allege that the Department
of Labor ("DOL") suspended a rule and imposed a new rule without
following the requisite procedures for "rule making" as set forth
in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553 and
701 et seq.  All Defendants contend that DOL's rule making
complied with the requirements of the APA.  Defendant-Intervenors

also contend that they are entitled to the recovery of certain wages based upon DOL's rules which were not implemented during this court's preliminary injunction.

Also pending before this court is Defendant-Intervenors Motion for Leave to File Supplemental Memorandum Regarding Mootness ("Supplemental Memorandum"). (Doc. 138.)  Because that memo addresses the issue of mootness in relation to the summary judgment pleadings, the motion will be allowed.  Defendant-Intervenors are not required to separately file the Supplemental Memorandum.

For the reasons set forth herein, Plaintiffs' motion for summary judgment will be granted and Defendant-Intervenors' motions for partial summary judgment will be denied.

## I.   FACTS[1]

The Immigration and Nationality Act of 1952, as amended, provides a means by which employers may legally obtain temporary services of foreign agricultural workers when American workers are not available and classifies those foreign workers as "(H)(ii)(a)" ("H-2A").  8 U.S.C. § 1101(a)(15)(H)(ii)(a).  The Department of Labor and Department of Homeland Security are the

---

[1] The relevant facts of this case are largely undisputed and are more thoroughly set out in Plaintiffs' brief in support of their motion for preliminary injunction (Doc. 3) and in the Federal Defendants' response to the motion for preliminary injunction (Doc. 36).  The facts are summarized in this opinion and order.

agencies responsible for creating the regulations necessary to implement the H-2A program and for administering that program. The H-2B program is a similar program originally directed to logging workers in the forest products industry.[2] See id. § 1101(a)(15)(H)(ii)(b).

Congress delegated to the Secretary of Labor the authority to implement the H-2A certification program through administrative rule making. See Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 301(e), 100 Stat. 3359. Farmers must be "certified" by DOL to participate in the H-2A program. To obtain certification, the contracts the farmers enter into with their workers must comply with the H-2A rules and regulations in effect at that time. See 20 C.F.R. § 655.105 (removed Feb. 12, 2010). The rules and regulations cover a variety of issues related to the H-2A program, including wages to be paid the foreign workers. See 8 U.S.C. § 1188(a)(1); see also, e.g., 20 C.F.R. § 655.105(g) (removed Feb. 12, 2010). For example, the Adverse Effective Wage Rate ("AEWR") sets the wage rate, and the AEWRs set by DOL's H-2A rules affect the wage rates in the applicable labor markets. A rule raising the AEWR

---

[2] Under the 1987 Rule, the H-2A and H-2B programs had separate rules. When the 2008 Rule was implemented, the H-2B program was incorporated into the H-2A process. Thus, for purposes of this order, the rule making process is referred to as the H-2A program even though the H-2B rules are affected by this rule making process as well.

increases the market wage rate.  Correspondingly, a rule lowering
the AEWR decreases the market wage rate.  See <u>Indus.
Holographics, Inc. v. Donovan</u>, 722 F.2d 1362, 1367 (7th Cir.
1983) (stating that the assumption that employment of an alien at
wages below the prevailing wage will tend to affect the wages of
American workers is not arbitrary or capricious).

In 1987, DOL promulgated a series of regulations governing
the H-2A program (collectively referred to herein as "the 1987
Rule") that largely remained in effect until 2008, when DOL
promulgated new H-2A regulations ("the 2008 Rule") and eliminated
the 1987 Rule.  The 2008 Rule became effective on January 17,
2009.  <u>See</u> Temporary Agricultural Employment of H-2A Aliens in
the United States; Modernizing the Labor Certification Process
and Enforcement, 73 Fed. Reg. 77,110, 77,110 (Dec. 18, 2008).
The 2008 Rule was created to fix various perceived problems with
the 1987 Rule.  <u>See id.</u>  For example, the 2008 Rule was designed
to eliminate duplicative H-2A activities, more rigorously
penalize noncompliant entities, and protect workers.  <u>Id.</u>

On March 17, 2009, DOL issued a notice of proposed rule
making ("the 2009 NPRM"), proposing to "suspend" the 2008 Rule
for nine months and reinstate the 1987 Rule "[t]o avoid the
regulatory vacuum that would result" from that suspension.
Temporary Employment of H-2A Aliens in the United States, 74 Fed.
Reg. 11,408, 11,408 (Mar. 17, 2009).  DOL specified a ten-day

5

comment period for the 2009 NPRM.  <u>Id.</u>  The 2009 NPRM advised

interested parties that DOL would not consider certain comments

in promulgating any rule that might arise from the notice:

> Please provide written comments only on whether the
> Department should suspend the December 18, 2008 final
> rule for further review and consideration of the issues
> that have arisen since the final rule's publication.
> <u>Comments concerning the substance or merits of the</u>
> <u>December 18, 2008 final rule or the prior rule will not</u>
> <u>be considered</u>.

<u>Id.</u> (emphasis added).  The "prior rule" reference was to the 1987

Rule, which was to be reinstated during the suspension period.

On May 29, 2009, consistent with the 2009 NPRM, DOL issued a

new H-2A rule ("the Substitution Rule"), scheduled to take effect

on June 29, 2009, and summarized as follows:

> The Department of Labor (DOL or Department) is suspending
> the H-2A Final Rule published on December 18, 2008 and in
> effect as of January 17, 2009. . . . To ensure continued
> functioning of the H-2A program, the Department is
> republishing and reinstating the regulations in place on
> January 16, 2009 for a period of 9 months, after which
> the Department will either have engaged in further
> rulemaking or lift the suspension.

Temporary Employment of H-2A Aliens in the United States, 74 Fed.

Reg. 25,972, 25,972 (May 29, 2009).  With regard to the scope-of-

comment restriction contained in the 2009 NPRM, the Substitution

Rule states:

> [I]n the Notice, the Department requested that parties
> limit their comments to the issue of whether the
> Department should suspend the December 2008 Rule for
> further review and consideration of the issues that
> have arisen since the December 2008 Rule's publication.
> Though all comments have been reviewed, only those
> comments responding to issues on which the Department

6

sought comment were considered in this Final Rule. Id. at 25,973.

On June 9, 2009, North Carolina Growers' Association, Inc.; National Christmas Tree Association; Florida Fruit & Vegetable Association, Inc.; Virginia Agricultural Growers Association, Inc.; Snake River Farmers Association; National Council of Agricultural Employers; North Carolina Christmas Tree Association; North Carolina Pickle Producers Association; Florida Citrus Mutual; North Carolina Agribusiness Council, Inc.; Maine Forest Products Council; Alta Citrus, LLC; Everglades Harvesting & Hauling, Inc.; Desoto Fruit and Harvesting, Inc.; Forest Resources Association; Titan Peach Farms, Inc.; H-2A USA, Inc.; and Overlook Harvesting Company, LLC (collectively, "Plaintiffs") filed a Complaint naming as defendants DOL, Hilda L. Solis in her official capacity as Secretary of DOL, the Department of Homeland Security ("DHS"), and Janet Napolitano in her official capacity as Secretary of DHS (collectively, "the Federal Defendants"). (Doc. 1 at 1-3.) Plaintiffs allege that the Federal Defendants violated the APA, 5 U.S.C. §§ 553 and 701 et seq., in formulating the Substitution Rule. (Compl. (Doc. 1) ¶¶ 54-86.) Plaintiffs are all farm operators or foresters that have an interest in, and are impacted by, the H-2A and H-2B programs and the regulations of those programs.

On June 18, 2009, United Farm Workers, James Cease, Mario

Centeno-Rodriguez, Juan Cisneros-Ibarra, Luis Enrique Cisneros-Ibarra, Reymundo Gutierrez, Carlos Luis Guzman-Avila, Juan Luis Guzman-Centeno, Jose Raul Guzman-Centeno, Abelardo Hernandez-Aguas, Gregorio Huertas-Samano, Pedro Ibarra-Avila, Atanacio Lugo-Rincon, Obdula Maldonado-Abellaneda, Miguel Angel Olguin-Hernandez, Arturo Olguin-Monroy, Omera Rodriguez-Guzman, Desiderio Tovar-Zapata, and Alejandro Trejo-Leon (collectively, "Defendant-Intervenors") filed a Motion to Intervene as Parties Defendant (Doc. 37). The court granted Defendant-Intervenors' motion to intervene. (Doc. 90 at 3.) Defendant-Intervenors support the Substitution Rule and, pursuant to that rule, filed counterclaims seeking to recover the higher wage rates payable under the Substitution Rule's AEWR rather than the lower wage rates which were actually implemented pursuant to the 2008 Rule during the period in which this court's injunction was pending. This wage rate issue that arose as a result of the two conflicting rules is referred to herein as the "Wage Differential."

After this court entered an order granting Plaintiffs' motion for a preliminary injunction (Doc. 59), DOL filed a new notice of proposed rule making seeking to suspend the 2008 Rule and implement a new rule. <u>See</u> Temporary Agricultural Employment of H-2A Aliens in the United States, 74 Fed. Reg. 45,906 (Sept. 4, 2009). On February 12, 2010, DOL issued a final rule

regarding the H-2A program.  <u>See</u> Temporary Agricultural

Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884

(Feb. 12, 2010) ("the 2010 Rule").  The 2010 Rule became

effective March 15, 2010, and is not at issue in this case.

However, the applicable DOL rules during the time period of June

2009 through March 2010, when implementation of the Substitution

Rule was enjoined by this court pending a final resolution on the

merits, are at issue.  All parties agree that during that time

period, DOL administered the H-2A program pursuant to the 2008

Rule and did not implement the Substitution Rule.  The parties

also agree that there is a Wage Differential between the 2008

Rule as administered during the pendency of the injunction and

the AEWR that would have been implemented pursuant to the

Substitution Rule.

## II.  LEGAL STANDARDS

### A.  Mootness as to the Federal Defendants

In response to Plaintiffs' motion for summary judgment, the

Federal Defendants contend that

> Plaintiffs' claims for declaratory and injunctive
> relief based on [the Substitution Rule] have been
> rendered moot and Plaintiffs no longer have a live case
> or controversy as to the Federal Defendants.  Because
> federal courts are forbidden from entertaining actions
> without a case or controversy, this Court should
> dismiss Plaintiffs' claims against the Federal
> Defendants.

(Defs.' Opp'n Pls.' Mot. Summ. J. (Doc. 126) at 4.)  Plaintiffs

agree with the Federal Defendants that the issues in this case

are moot as to the Federal Defendants except to note that

Plaintiffs will be seeking attorneys' fees under the Equal Access

to Justice Act, 28 U.S.C. § 2412. (See generally Pls.' Reply

Government Defs. (Doc. 128) at 1-2.)

Plaintiffs' Complaint seeks both declaratory and injunctive

relief with respect to the Substitution Rule. (Doc. 1 at 34.)

> To qualify as a case fit for federal-court
> adjudication, an actual controversy must be extant at
> all stages of review, not merely at the time the
> complaint is filed. . . .
>     When a legislature amends or repeals a statute, a
> case challenging the prior law can become moot even
> where re-enactment of the statute at issue is within
> the power of the legislature.

Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006) (internal

quotation marks omitted). Additionally, declaratory relief such

as Plaintiffs have sought in this case may be entered only when

"the challenged government activity . . . is not contingent, has

not evaporated or disappeared, and, by its continuing and

brooding presence, casts what may well be a substantial adverse

effect on the interests of the petitioning parties." See Super

Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974). "The

question is whether the facts alleged, under all the

circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory

judgment." Id. (internal quotation marks omitted).

This court agrees with the parties that because the H-2A and

H-2B programs were administered under the 2008 Rule following

this court's preliminary injunction until implementation of the

2010 Rule, this case is moot as to the Federal Defendants.

Accordingly, this case will be dismissed as moot as to the

Federal Defendants.[3]  However, as argued by Plaintiffs, because

of the Wage Differential issue and related counterclaims, this

matter is not moot as to Defendant-Intervenors.  This court will

therefore address summary judgment as to the remaining claims.[4]

**B.   Summary Judgment**

Summary judgment is appropriate where an examination of the

pleadings, affidavits, and other proper discovery materials

before the court demonstrates that no genuine issue of material

fact exists and that the moving party is entitled to judgment as

a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears

the burden of initially demonstrating the absence of a genuine

---

[3] 5 U.S.C. § 702 provides "[t]hat any mandatory or
injunctive decree shall specify the Federal officer or officers.
. .personally responsible for compliance.  This order contains an
injunction.  Should the Federal Defendants be necessary parties
because of injunctive relief, then in the alternative this court
would apply the same analysis to Plaintiffs' claims against the
Federal Defendants as set forth herein with respect to the
Intervenor-Defendants.

[4] All parties' summary judgment and partial summary judgment
briefs have argued either in response to, or in accordance with,
the substantive arguments contained in the Federal Defendants'
briefs.  This court has considered the Federal Defendants'
substantive arguments as they relate to Plaintiffs' motion for
summary judgment and Defendant-Intervenors' motions for partial
summary judgment as adopted or responded to by Plaintiffs or
Defendant-Intervenors.

issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Id.</u> at 255. A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56; <u>Anderson</u>, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. <u>Anderson</u>, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

## C.  Review of Agency Action

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review
12

thereof." 5 U.S.C. § 702. In reviewing agency action, "the
function of the district court is to determine whether or not as
a matter of law the evidence in the administrative record
permitted the agency to make the decision it did. De novo
factfinding by the district court is allowed only in limited
circumstances." Occidental Eng'g Co. v. INS, 753 F.2d 766, 769
(9th Cir. 1985).

> The focal point for judicial review should be the
> administrative record already in existence, not some
> new record made initially in the reviewing court. The
> task of the reviewing court is to apply the appropriate
> APA standard of review, 5 U.S.C. § 706, to the agency
> decision based on the record the agency presents to the
> reviewing court.

Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-744 (1985)
(internal quotation marks and citation omitted). "The APA
specifically contemplates judicial review on the basis of the
agency record compiled in the course of informal agency action in
which a hearing has not occurred." Id. at 744. The Federal
Defendants have filed the agency record with this court and this
matter is ripe for review. See Notice of Paper Filing (Doc.
123).

Judicial review of agency action is narrow. Motor Vehicle
Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,
463 U.S. 29, 43 (1983). A reviewing court may not substitute its
judgment for that of the agency. Id. However, an agency's
action may be set aside if it is found to be "arbitrary,
capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A).

In conducting rule making pursuant to the APA, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43 (internal quotation marks omitted).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies . . . .

<u>Id.</u>; <u>see also</u> <u>Ohio River Valley Envtl. Coal. v. Kempthorne</u>, 473 F.3d 94, 102 (4th Cir. 2006). "Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." <u>Ohio River Valley</u>, 473 F.3d at 102-103.

**III. ANALYSIS**

Under the APA, "rule making" is defined as an agency's "process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). Section 553(c) of the APA requires that agencies "give interested persons an opportunity to participate in the rule making through submission of written data, views, or

14

arguments."[5]  Id. § 553(c).  This court finds that the two

actions by DOL with respect to the Substitution Rule, that is,

the suspension of the 2008 Rule and reinstatement of the 1987

Rule, constituted "rule making" under §§ 551 and 553.[6]

In support of their motion for summary judgment, Plaintiffs

---

[5] 5 U.S.C. § 553(b) provides that the notice provisions do
not apply "when the agency for good cause finds (and incorporates
the finding and a brief statement of reasons therefor in the
rules issued) that notice and public procedure thereon are
impracticable, unnecessary, or contrary to public interest."  The
Federal Defendants do not contend this provision applies, nor is
there a finding and brief statement of reasons which would permit
suspension of the notice provisions.

[6] The Substitution Rule is a "rule" as that term is defined
in the APA.  Section 551(4) states that a "rule" is "the whole or
a part of an agency statement of general or particular
applicability and future effect designed to implement, interpret,
or prescribe law or policy."  5 U.S.C. § 551(4).  An act also
constitutes a "rule" if it is an "approval or prescription for
the future" of rates or wages.  Id.  Here, the Substitution Rule,
specifically the component that reinstates the 1987 Rule,
constituted a "rule" in that it implements the AEWRs with which
Plaintiffs must comply.
        Notwithstanding the fact that the Supreme Court has
suggested that rule suspensions are permissible, see Motor
Vehicle Mfrs. Ass'n, 463 U.S. at 50 n.15 ("We think that it would
have been permissible for the agency to temporarily suspend the
passive restraint requirement . . . ."), it is not settled
whether rule suspensions constitute "rule making" under § 551(5)
and must therefore comply with § 553(c).  Nevertheless, it is not
necessary to resolve this issue to determine whether Plaintiffs'
motion for summary judgment should be granted.  Here, Defendants
did more than just suspend a set of regulations in promulgating
the Substitution Rule.  In addition to withdrawing a rule,
Defendants effectively formulated a new rule by reinstating the
1987 Rule.  As stated, the APA's definition of "rule making"
explicitly covers rule formulation.  5 U.S.C. § 551(5) (defining
"rule making" as an agency's "process for formulating, amending,
or repealing a rule" (emphasis added)).  Accordingly, in order
for the Substitution Rule to be valid, DOL must have complied
with § 553(c) of the APA in reinstating the 1987 Rule.

argue that the 2009 NPRM's scope-of-comment restriction violated § 553(c) of the APA because the restriction prohibited Plaintiffs from participating in the making of the actual rule that DOL proposed to implement, that is, the 1987 Rule.  See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 11,408, 11,408 (Mar. 17, 2009) ("Comments concerning the substance or merits of the December 18, 2008 final rule or the prior rule will not be considered.").  Not only did DOL issue an initial statement advising that it would not consider comments on the substance or merits of the two rules, DOL in fact refused to consider comments that it received as to those rules' substance and merits.  Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,973 (May 29, 2009) ("Though all comments have been reviewed, only those comments responding to issues on which [DOL] sought comment were considered in this Final Rule.").[7]

With respect to rule making, 5 U.S.C. § 553(c) provides:

> After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for

---

[7] In addition to avoiding the APA rule making procedures, this limitation on comment review creates a separate issue with respect to the judicial review provided for in 5 U.S.C. § 702. Because of the comment limitation and the notation that "only those comments responding to issues on which [DOL] sought comment were considered in this Final Rule," it is difficult for a reviewing court to determine which comments were considered by DOL.  Thus, the procedure used by DOL in this rule making is, at best, evasive as to judicial review of substantive provisions.

oral presentation.  After consideration of the relevant
matter presented, the agency shall incorporate in the
rules adopted a concise general statement of their
basis and purpose.

5 U.S.C. § 553(c).  To comply with the notice and comment

provisions of § 553(c), "the agency must examine the relevant

data and articulate a satisfactory explanation for its action

including a rational connection between the facts found and the

choice made."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

DOL refused to accept and consider comments as to the 2008

Rule and the 1987 Rule even though the 2009 NPRM specifically

identified substantive issues which would be directly affected by

the proposed rule making.  Several stated reasons for the 2009

NPRM raise questions as to the propriety of the comment content

restriction.  However, of particular significance to DOL's

comment restriction is the fact the 2009 NPRM stated that the

suspension of the 2008 Rule and the re-implementation of the

former H-2A rule were warranted because of "severe economic

conditions [now] facing the country."  See Temporary Employment

of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,972

(May 29, 2009).  If severe economic conditions required a rule

suspension and re-implementation of the 1987 Rule, then comments

as to the substance and merits of the rules by persons affected

are relevant and important.  DOL's refusal to consider such

comments constitutes a failure to "give interested persons an

opportunity to participate in the rule making through submission

17

of written data, views, or arguments." <u>See</u> 5 U.S.C. § 553(c).

Additionally, the refusal to consider the merits of the two rules

constitutes a "fail[ure] to consider . . . important aspect[s] of

the problem." <u>See</u> <u>Motor Vehicles Mfrs. Ass'n</u>, 463 U.S. at 43.

Not surprisingly, individuals providing comments noted the

lack of consideration of the substance and merits as to the

potential economic effects of the agency action. One comment

stated that

> [n]owhere in the Federal Register is the economic
> impact of this precipitous rulemaking addressed by the
> Department. It is inconceivable that after only six
> weeks under regulations reviewed and then promulgated
> in compliance with [the] APA, the Labor Department
> could ascertain that a return to previous regulations
> is economically beneficial to the Department, H2A
> employers or workers.

Comment, Charles T. Hall, Jr., Mar. 21, 2009 (ETA-2008-0001-

1070.1), DOL000113, DOL000114. Similarly, another comment noted:

> Our experience has shown the issued Adverse Effect Wage
> Rate (AEWR) has had an overall detrimental effect on
> the performance level of our harvesting workers. Under
> the previous H-2A regulations the AEWR guaranteed wage
> significantly exceeded both prevailing wage standards
> and the Florida minimum wage rate. The artificially
> high AEWR adversely impacted the workers' motivation to
> strive for desired productivity levels.

Comment, Ricke Kress, Mar. 26, 2009 (ETA-2008-0001-1156-cp),

DOL000283, DOL000284. While this court makes no finding as to

whether these comments are accurate, the comments do appear to

address the substance and merits of the 2008 Rule and the 1987

Rule and therefore are the type of comments that were not

considered by DOL. Although DOL did note in the Substitution

18

Rule that it received comments about the AEWR, it appears consideration of those comments was limited only to the suspension issue and did not extend to the merits of the choice of rule during the suspension period. See Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,977 (May 29, 2009) ("One of the primary reasons that the new Administration wants to review the December 2008 Rule is precisely to determine whether the generally reduced wage rates under that rule are having a depressive effect on farmworker wages."). It is clear that DOL determined the substance and merits of the 1987 Rule were appropriate for current conditions during the suspension. DOL did so without considering merits comments and without explaining the substance and merits of its decision.

In addition to the comments DOL received, Plaintiffs have presented evidence that they would have submitted additional comments absent the scope-of-comment restriction contained in the 2009 NPRM. (See Wicker Aff. (Doc. 4-3) at 29 ("Again, as with the rest of the substance of the regulations governing the H-2A program, the NCGA would like an opportunity to comment on specific provisions . . . of the Department's proposal . . . . But according to the terms set by the Department in the Notice, any comments on these subjects will not be considered . . . .").) It is undisputed that Plaintiffs were prejudiced by the comment restriction. See Columbia Venture LLC v. S.C. Wildlife Fed'n,

562 F.3d 290, 294 (4th Cir.) (per curiam) ("[T]he party who claims deficient notice bears the burden of proving that any such deficiency was prejudicial, and if that party fails to carry its burden, the agency's decision must be upheld." (internal quotation marks omitted)), cert. dismissed, 130 S. Ct. 418 (2009). Indeed, the Substitution Rule recognized that at least one affected party objected to the scope-of-comment limitation and had comments it would like to offer. Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,979 (May 29, 2009) ("An agricultural association objected to the Department's limitation of the scope of comments to the suspension itself, as opposed to comments on the merits or substance . . . . The association stated that it has numerous comments it would like to offer on both the current regulations, as well as the prior regulations . . . .").

In addition to the economic issues for which no comments as to the substance and merits of the rules were solicited, the Substitution Rule's reinstatement of the 1987 Rule in its entirety, see id. at 25,973, presents an additional issue for which no comments as to substance or merits were considered. The Fourth Circuit Court of Appeals previously held that a regulation contained within the 1987 Rule was invalid and harmed a party that is a plaintiff in the current action. See U.S. Dep't of Labor v. N.C. Growers Ass'n, Inc., 377 F.3d 345, 353 (4th Cir. 2004) ("[W]e hold that the cultivation, growing, and harvesting

20

of Christmas trees is agriculture as defined in § 203(f), and
that the employees of the Growers are thus exempt from the
overtime provisions of the FLSA."). The issues arising from this
classification were noted in at least one comment to DOL.
Comment, Gail Greenman, Mar. 26, 2009 (ETA-2008-0001-1169.1),
DOL000314, DOL000316 ("Since 2004, Christmas tree growers who
have adopted modern practices in the Fourth Circuit have been
considered agriculture for purpose[s] of the FLSA. This has not
been the case for Christmas tree growers in the rest of the
country. Until the Department implemented its current rules,
there was a lack of uniform standards across the country as to
the classification of Christmas tree operations."). Because this
comment is directed to the merits of the 1987 Rule, the comment
would not have been considered. This is another instance in
which DOL failed to "examine the relevant data and articulate a
satisfactory explanation for its action." See <u>Motor Vehicles</u>
<u>Mfrs. Ass'n</u>, 463 U.S. at 43.

By prohibiting consideration and discussion of the substance
and merits of the rules subject to the 2009 NPRM, DOL "failed to
consider an important aspect of the problem" and failed to "offer
a rational connection between the facts found and the choice
made." See <u>id.</u> at 43, 52 (internal quotation marks omitted).
Although Plaintiffs and Defendant-Intervenors alike might be
familiar with the 1987 Rule, Defendant-Intervenors have presented
no authority which supports a proposition that temporary rule

reinstatements should be evaluated under a different legal

standard than that which is used in assessing the promulgation of

all other types of rules.[8]

As a result of the comment restrictions, the undisputed fact

that substantive comments were submitted and not considered, and

the fact that substantive comments were not submitted as a result

of the scope-of-comment limitations contained in the 2009 NPRM,

this court finds that the Federal Defendants' formulation of the

Substitution Rule was arbitrary and capricious as that term is

used in 5 U.S.C. § 706(2)(A).  DOL openly failed to consider

comments concerning the substance and merits of the suspended

rule and the rule which was reinstated.  See Temporary Employment

of H-2A Aliens in the United States, 74 Fed. Reg. 25,972, 25,973

(May 29, 2009) ("Though all comments have been reviewed, only

those comments responding to issues on which [DOL] sought comment

were considered in this Final Rule.").  Defendant-Intervenors

have not presented any authority or argument which adequately

explains the Federal Defendants' refusal to consider the

substance and merits of the 1987 Rule, nor have they explained

why the evaluation of the substance and the merits of the 1987

---

[8] The argument that reinstatement was necessary to avoid a
regulatory vacuum created by the suspension is not persuasive
because the suspension was self-imposed by the agency.
Notwithstanding the failure to comply with the APA, the
suspension process urged by the Federal Defendants, if taken to
its extreme, would permit a complete circumvention of the APA and
judicial review by the enactment of suspensions and temporary
implementations.

Rule and the 2008 Rule were not relevant issues that DOL was required to consider. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (internal quotation marks omitted)).

For the reasons set forth herein, this court finds that Plaintiffs' Motion for Summary Judgment (Doc. 124) should be granted as to Defendant-Intervenors. In light of this ruling and following careful review, this court declines to impose the measures suggested by Defendant-Intervenors in their Supplemental Memorandum. (See Doc. 138 Ex. 1.)

## IV. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Defendant-Intervenors' Motion for leave to File Supplemental Memorandum Regarding Mootness (Doc. 138) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 124) is **DENIED AS MOOT** as to the Federal Defendants. This court retains jurisdiction as to the Federal Defendants pending a final order as to Plaintiffs' claim for attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 124) is **GRANTED** as to Defendant-Intervenors and

Defendant-Intervenors' Motions for Partial Summary Judgment (Docs. 131, 132) are **DENIED**.

**IT IS FURTHER ORDERED** that a **PERMANENT INJUNCTION** is hereby issued, enjoining the implementation of the Substitution Rule (Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972 (May 29, 2009)) and denying recovery by Defendant-Intervenors pursuant to their counterclaims by or under the rules set out in Temporary Employment of H-2A Aliens in the United States, 74 Fed. Reg. 25,972 (May 29, 2009).

**IT IS FURTHER ORDERED** that Defendant-Intervenors' claims are **DISMISSED WITH PREJUDICE**.

This the 4th day of October 2011.

William L. Osteen, Jr.
United State District Judge